## SOUTHWESTERN SAVINGS & LOAN COMPANY,
### Plaintiff-Appellant, v. DILUZIO et., Defendant-Appellees.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20121.   Decided December 3, 1945.

F. M. Farnsworth, and Robt. H. Spooner, Cleveland, for plaintiff-appellant.

Herbert W. Bell, and J. C. Logue, Cleveland, for defendants-appellees.

### OPINION

By MORGAN, J.

On March 30, 1935, the defendants, Louis and Guiseppina DiLuzio were indebted to plaintiff bank in the amount of $3737.75 on a promissory note secured by a mortgage on their home.

The defendants applied for a H. O. L. C. loan. This was allowed by H. O. L. C. for $3200.00 which was 80% of the H. O. L. C. appraisal. Certain expenses, including taxes, abstract, attorney fees etc., amounted to $415.79 leaving $2784.21 as the amount available for the first mortgagee, the plaintiff bank.

The plaintiff bank by its release, executed to H. O. L. C., agreed "to accept in full settlement of the claim of the under-

signed the sum of $2784.21, face value of the bonds of Home Owners Loan Corporation." The plaintiff bank was given the privilege of converting said bonds in whole or in part into savings accounts credits of the bank.

On March 30, 1935, the defendants, DiLuzio, executed a note and second mortgage to the bank in the amount of $779.87. This action was brought by the plaintiff bank against the defendants, DiLuzio, to recover from them the sum of $682.08 with interest, being the amount which the bank alleged in its petition was then due from defendants on the said second mortgage note.

A jury was waived and the trial judge rendered judgment for the defendants.

In most of the States of the Union similar cases to the instant case have arisen. These cases in general hold that a mortgage secretly taken and without the specific consent and approval of H. O. L. C. is invalid on the grounds of estoppel, lack of consideration and public policy where the mortgagee had agreed to accept bonds in full settlement of his claim.

The case of **Weber v Sternad, 140 Oh St 253,** affirming this court in **69 Oh Ap 258,** followed the general rule and held that (syllabus):

"A mortgagee who voluntarily and knowingly releases his mortgage lien and waives the unpaid balance of the loan for the agreed purpose of enabling the mortgagor to refinance his property by obtaining a new mortgage loan from the Home Owners Loan Corporation, is estopped from asserting a claim based upon a new unsecured note thereafter secretly obtained from the mortgagor in known violation of the terms and conditions of the refinancing agreement."

The plaintiff contends that the general rule should not be followed in the present case because the fee or closing attorney of H. O. L. C. had knowledge of the execution of the second mortgage-note in this case. In fact the record shows that the second mortgage was prepared by an assistant in the office of the closing attorney. This assistant testified as follows:

"Q. You prepared the Home Loan mortgage?
A. Yes.
Q. Who told you to prepare the second mortgage?
A. The Southwestern Savings & Loan Company.
Q. You talked with The Southwestern Savings & Loan Co. about this?

A. That's right.
Q. With Mr. Spooner?
A. I believe so.
Q. Did he tell you what to put in it?
A. Yes."

The plaintiff contends that the above facts put the H. O. L. C. on notice of the execution of the second mortgage note and is bound by it notwithstanding the fact that plaintiff bank agreed to accept bonds in the amount of $2784.21 in full settlement of its claim.

One of the witnesses in this case was Charles Kaps who testified that on Jan. 1, 1935, he became the district counsel of H. O. L. C. and continued in that position until June, 1940. He testified that H. O. L. C. in 1935 had a loan committee composed of the district manager, the district appraiser and himself as district counsel. The H. O. L. C. loan in this case was approved on April 24, 1935, by the above named three persons. Mr. Kaps testified that the loan committee in approving the H. O. L. C. loan took into consideration the mortgagee's consent to take the bonds in full settlement. It was also a rule of H. O. L. C. that if an additional security such as a second mortgage was to be given, such security "must be shown on the mortgagee's consent to take bonds" and it is conceded that there is nothing in the mortgagee's consent in this case to indicate that there was to be a second mortgage given.

Mr. Kaps further testified that after the loan committee had passed on the loan it became the duty of the "closing attorney" to draw a note and mortgage for the amount as indicated by the mortgagee's consent to take bonds. The closing attorney was to make a complete title search and if this was satisfactory to have the note and mortgage properly executed, recorded and returned to H. O. L. C. The bonds would then be sent to the refinanced mortgagee.

Mr. Kaps also testified as follows:

"Q. Now, did the closing attorney in this case, or in any case, have any authority to grant permission or approval to allow the second mortgagee to take back an additional note or mortgage, or second note or mortgage?

A. The closing attorney had no such authority, but had strict instructions, under the rules, under no circumstances to permit any kind of security to be taken other than designated in the Mortgagee's Consent to Take Bonds."

Mr. Kaps further testified that "A consent to the creditor

to take back a second mortgage from the debtor would have to be approved by the loan committee."

It is not claimed in this case that the giving of the second mortgage was ever approved by the loan committee. The record also shows that there is nothing in the files of H. O. L. C. in this case with reference to a consent or approval for plaintiff to take back a second mortgage.

In a memorandum opinion filed by the trial judge in this case, he stated:

"The contention of plaintiff that full knowledge of this transaction was brought to the Home Owners' Loan Corporation through its agent is not substantiated by the evidence. The uncontradicted testimony is that Mr. Clarke the fee attorney, had a very definite limited authority and there is no evidence which justifies the conclusion that any of the transactions which were carried on by members of Mr. Clarke's office were ever accepted by the Home Owners Loan Corporation and made a part of this transaction. The court is further of the opinion that the interests of the public demand careful scrutiny of contracts of this nature and that such a scrutiny when applied to this case would not justify a decree in favor of the plaintiff."

The majority of this court is of the opinion that not only was the trial judge justified in coming to the above factual conclusion but also that the evidence in this case does not permit or support any other conclusion.

The evidence in this case also discloses that the DiLuzios could not read or understand English and relied solely on the information furnished them by the assistant to the closing attorney who handled the second mortgage. This assistant testified that he did not know that the mortgagee had consented to accept $2784.21 in bonds in full settlement of its claim and it therefore follows that this fact was never brought to the attention of defendants in this case.

The exact question in this case was passed upon by the New Jersey Court of Errors and Appeals in Markowitz v Berg, 127 N. J. Equity, page 90, paragraphs 1 and 2 of the syllabus:

"1. The second mortgage here in suit, if made without the knowledge of the Home Owners Loan Corporation as security for part payment of a judgment, which the holder of the judgment had settled and released by the refunding effected by the corporation, contravenes the fundamental policy

of the Home Owners Loan Corporation Act (12 U. S. C. A. §§1461 et seq) and the rules and regulations formulated in pursuance of the authority thereby granted and is therefore void.

2. Such knowledge as the fee attorney of the Home Owners Loan Corporation had of the existence of the second mortgage here in question, or of the intention of the home owner to assume payment of part of the judgment debt so agreed to be cancelled, is not imputable to the corporation."

The plaintiff has cited to us the case of **Home Owners Loan Corporation v Baker et al, 73 Oh Ap 195.** We find, however, that in that case knowledge of the second mortgage was brought home to the Home Owners' Loan Corporation itself and not simply to the closing attorney. The case therefore is not in point in the present case.

Judgment affirmed.

LIEGHLEY, J., concurs.
SKEEL, P. J., dissents.

### DISSENTING OPINION

By SKEEL, P. J.

This action is one seeking judgment on a negotiable note and foreclosure of the mortgage given to secure its payment which note was given to the plaintiff in connection with the refinancing of defendant's mortgage debt to the plaintiff through the H. O. L. C. The defendants had been in default in their payments on their note and mortgage given to plaintiff in 1924 and negotiations were commenced to refinance through H. O. L. C. some time in 1933. On March 30, 1935, the balance due plaintiff was $3737.75. The property had been appraised by agents of H O. L. C. to be of the value of $4000.00 and therefore a loan secured by first mortgage of $3200.00 was offered. Of this amount it was estimated that about $250.00 would be expended for taxes and expenses, leaving $2957.89 available to liquidate plaintiff's first mortgage. The expense and tax item was increased so that as the transaction was finally concluded $2784.21 was made available to the plaintiff.

The plaintiff before signing the H. O. L. C. consent to take bonds and cancel its mortgage, entered into a written contract with the defendants, agreeing to do so, and the defendants agreed that they would give plaintiff a $500.00 note secured by a second mortgage to repay plaintiff in part at least for the loss it would sustain. The contract further pro-

vided that the escrow agent should cash the bonds to be received from H. O. L. C. in the sum of $2957.89 and purchase plaintiff's pass books at the market price. It was further agreed that if pass books of the face value of $3737.75 could be bought for less than $2957.89, then whatever was not needed for that purpose should be credited upon the H. O. L. C. mortgage and the five hundred dollar second mortgage cancelled. But in the event that the face value of the pass books that could be bought with the available funds was not sufficient to equal the amount of defendant's indebtedness to the plaintiff, then the amount of the deficiency should be "incorporated in the second mortgage" not to exceed, however, the sum of five hundred dollars. As the deal was closed, however, only $2784.21 was received with which to buy pass books, so the second mortgage was increased to $779.87. Also, it was found by the escrow agent that pass books of the plaintiff were not available on the market, so books of the Lincoln Savings & Loan Company were purchased with the consent of the plaintiff. The face value of such pass books gave defendants a credit on the second mortgage of $292.68 thus reducing the amount due thereon to four hundred eighty-seven dollars and nineteen cents ($487.19) which credit was entered upon the note.

The plaintiff in the negotiation for this refunding transaction including the making of the contract just referred to, dealt entirely with the Home Owners Loan Corporation's fee or closing attorney. After signing the H. O. L. C's form styled "Mortgagees Consent to Take Bonds or Stock Certificates or Other Securities" which provided that defendant's indebtedness to plaintiff was $3737.75 for which plaintiff would receive $2957.81 (subsequently changed by attorneys for H. O. L. C. with plaintiff's consent to $2784.21) in bonds to be converted into savings account credits in full for said indebtedness, the plaintiff sent it to the H. O. L. C. attorneys, together with the second mortgage and note as provided for in the contract above referred to, with directions to see to its execution by the defendants and to deliver the mortgage and note, when signed, to the escrow agent. There is some evidence to the effect that the H. O. L. C. fee or closing attorneys drew the second mortgage and note themselves.

The Home Owners' Loan Corporation's attorneys then forwarded to the Abstract Company designated as escrow agent its own mortgage, plaintiff's first mortgage, with cancellation clause properly executed, together with "authorization" for H. O. L. C. bonds in the sum of $2750.00 and their check for

$22.50 and also the plaintiff's second mortgage to be filed "only in the event the bonds are insufficient." The H. O. L. C. also forwarded check for taxes and recording costs and escrow instructions.

The escrow agent finally closed the escrow by recording both mortgages and purchasing deposit certificates of The Lincoln Savings & Loan Company, which entitled the defendants to a $292.65 credit on the second mortgage of plaintiff and recorded said mortgage under the H. O. L. C. instructions.

The .defense to plaintiff's claims against the defendant is that the proper H. O. L. C. official did not consent to the plantiff's second mortgage and therefore it was fraudulently procured and is unenforceable.

The rule of the H. O. L. C. is that under proper circumstances a creditor who consents to a refunding of his mortgage when the bonds received (which equal 80% of the appraised value) are not sufficient to pay the full debt of the mortgagor, the H. O. L. C. in the exercise of its sound discretion and if it does not create a hardship on the debtor, may permit the creditor to secure from the debtor a promise to pay such deficiency, either secured or not by a second lien on the property, but in no case shall such promise to make such payment of an additional amount exceed the difference between the face value of the H. O. L. C. mortgage and the appraised value of the property. In this case the amount of total indebtedness assumed by the defendant is well under the appraised value of the property, so that the only question is whether or not the H O. L. C. consented thereto.

That a secret attempt to compel the mortgagor to pay the mortgagee the loss resulting from refunding the indebtedness of the mortgagor through H. O. L. C. is against public policy and void has been clearly established by the cases.

In the case of **Weber v Sternad, 140 Oh St 253,** affirming the Cuyahoga County Court of Appeals (**Weber v Sternad, 69 Oh Ap 258**) the syllabus provides:

"A mortgagee who voluntarily and knowingly releases his mortgage lien and waives the unpaid balance of the loan for the agreed purpose of enabling the mortgagor to refinance his property by obtaining a new mortgage loan from the Home Owners' Loan Corporation, is estopped from asserting a claim based upon a new unsecured note thereafter secretly obtained from the mortgagor in known violation of the terms and conditions of the refinancing agreement."

The facts in the Weber case, (supra) showed that the agreement to pay an additional amount over and above the amount represented by the bonds was carefully concealed from H. O. L. C. But in the case now under consideration, just the reverse was true. The plaintiff did not sign the consent to take bonds until the defendant had signed the agreement to execute a second mortgage, and such agreement was procured from the defendant by the attorney of H. O. L. C. Also, it is not disputed that the fee or closing attorney procured the execution of the second mortgage, and prepared the escrow instructions whereby the escrow agent was empowered to record such mortgage when the conditions provided therein had been met. Can it be said, with any force, that under these circumstances the H. O. L. C. was without notice, and had not at least given its implied consent to the defendant's assuming such additional obligation? Certainly the conduct of H. O. L. C. in negotiating and securing the second mortgage for the plaintiff should estop it from denying that consent was given.

In the case of **H. O. L. C. v Baker, 73 Oh Ap 195,** the court had for consideration the following:—The facts disclosed that refunding of the mortgagor's loan would entail a loss of about $300.00 to the mortgagee. They refused to sign the consent to take bonds until the mortgagors agreed to pay the loss by second mortgage. This information was mailed to H. O. L. C. by letter addressed to the agency at its Canton office. Later the mortgagee's attorney wrote a letter to the H O. L. C. fee attorney explaining the delay in returning the "consent." In reply counsel for H. O. L. C. in effect said the transaction could not be closed because of the mortgagee's demand but notwithstanding this letter the transaction was closed. The court held as follows:

"A seasonable disclosure, to the Home Owners' Loan Corporation, of the consummation of a collateral agreement, entered into without fraud, concealment or duress, between a home owner and an original mortgagee to secure the mortgagee in part against the loss that would otherwise be suffered, which agreement is within the corporation's rules as to allowed total debt, makes such collateral agreement a part of the entire refinancing transaction, notwithstanding the formal language of the consent is to take bonds in full satisfaction of a larger debt; and a note and second mortgage given in pursuance of such collateral agreement, is

based on consideration, is not against public policy, and is valid."

I therefore conclude that even though there is some evidence that the fee attorney was without authority to consent to the mortgagee's requiring partial reimbursement for the loss that would be sustained in carrying out the refinancing of its mortgage by H. O. L. C. the conduct of H. O. L. C. in carrying on the negotiations for such additional payment through their own officers, constituted sufficient notice so that the closing of such transaction constituted at least implied consent that the mortgagor could assume the obligation of paying the second mortgage and it is therefore an enforceable obligation.